# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| Dennis Brown, | ) | |
| | ) | |
| Plaintiff, | ) | Case: 2:25-cv-01127 |
| | ) | |
| v. | ) | |
| | ) | |
| Continental Properties Company, Inc., | ) | |
| | ) | |
| Defendant. | ) | Jury Trial Demanded |
| | ) | |

## COMPLAINT

Plaintiff, Dennis Brown ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Continental Properties Company, Inc. ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5 *et seq*. ("Title VII") seeking redress for Defendant subjecting Plaintiff to sexual harassment, Defendant's discrimination on the basis of Plaintiff's sex, and Defendant's retaliation against Plaintiff for engaging in protected activity under Title VII.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 as Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5 *et seq*. is a federal statute.

3. Venue of this action properly lies in the Eastern District of Wisconsin, pursuant to 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §1391(b) as a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to jurisdiction have been satisfied.

5. A charge of employment discrimination on basis of sex, sexual harassment, and retaliatory discharge was filed by the Plaintiff with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"). (attached hereto as Exhibit "A").

6. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B"), and Plaintiff filed this lawsuit within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## PARTIES

7. Plaintiff is a natural person, over 18-years-of-age, who at all times relevant resided in Chicago, Illinois.

8. Defendant is a corporation that specializes in the real estate and property management industries.

9. Plaintiff was employed by Defendant as an "employee" within the meaning of 42 U.S.C §2000e(f).

10. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by Title VII, and has been engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. §2000e(b).

## BACKGROUND FACTS

11. Plaintiff worked for Defendant as a maintenance technician from on or about July 8, 2024, until his unlawful termination on or around June 9, 2025.

12. Plaintiff met or exceeded Defendant's performance expectations during the entire duration of his employment.

2

13. Plaintiff is a male and is a member of a protected class because of his sex.

14. Since at least September 2024 through June 2025, Defendant has subjected Plaintiff to different terms and conditions of employment than others not within his protected class and has been subjected to a hostile work environment on the basis of sex in violation of Title VII.

15. On or around September 2024, Plaintiff's wife, Sandy, brought cookies to the office for the staff and maintenance team.

16. During this visit, property manager Alicia Gonzales told Plaintiff's wife, "Dennis could do no wrong in my eyes".

17. Later, Plaintiff's wife expressed concern to Plaintiff, warning that Alicia seemed to have personal feelings for him.

18. In or around December 2024, there was a company Christmas party in the clubhouse.

19. At this party, Alicia gave Plaintiff several humorous gifts, including two pairs of knee-high chicken "leg" socks, one pair for Plaintiff and one for his wife.

20. Alicia requested that Plaintiff and his wife wear them, take pictures of them wearing the socks, and send them to her.

21. Plaintiff and his wife found this request disturbing and both were very uncomfortable as a result.

22. In or around March 2025, Alicia made statement to Plaintiff's supervisor, Lenwood "Mush" Reed that Plaintiff could do no wrong.

23. On or about March 15, 2025, during a coworker's birthday party at the clubhouse, Alicia sat next to Plaintiff while her husband was on her other side.

24. During the event, Alicia placed her hand on Plaintiff's lap and behaved in a highly

flirtatious manner, which made Plaintiff very uncomfortable.

25. Later, Mush's wife informed him that Alicia wanted to have a sexual relationship with Plaintiff.

26. At the same event, while outside smoking with Alicia and Mush, Alicia told Plaintiff that she was a "hoe" and attempted to seduce and entice Plaintiff.

27. Mush witnessed these actions.

28. On several occasions, Alicia blew kisses toward Plaintiff and made heart gestures in his direction.

29. Alicia frequently displayed flirtatious behavior in meetings and during work interactions.

30. Plaintiff's supervisor and other colleagues witnessed this conduct.

31. Additionally, when Plaintiff visited Alicia's office for work-related purposes, she would continue to make these gestures.

32. In or around April 2025, Alicia's attitude toward Plaintiff changed.

33. Alicia began criticizing Plaintiff's job performance without providing specific examples when he asked for clarification.

34. Plaintiff reported this to Mush, who suggested that Alicia's actions were likely in response to his rejection of her advances.

35. Mush advised Plaintiff to maintain distance from her.

36. On or about May 1, 2025, Alicia called Mush and Plaintiff into her office to issue Plaintiff's first and only write-up in 11 months of employment.

37. Alicia claimed that he had closed work orders while parts were still pending.

38. This process had previously been approved in a team meeting.

4

39. When Plaintiff reminded her of this, Alicia acknowledged the mistake and misunderstanding but said the write-up could not be rescinded because it had already been submitted to corporate.

40. Mush advised Plaintiff to sign the write-up to avoid appearing combative.

41. In or around mid-May 2025, Jillian, the Regional Manager, along with two HR representatives, visited the property.

42. Alicia and Jillian asked Plaintiff to hand over his keys and instructed him to tell Mush that Plaintiff had been fired.

43. Plaintiff did so, and Mush responded with confusion, wondering why he was being terminated.

44. When Mush asked Alicia for clarification, she responded by saying "April Fools!"

45. Mush and Plaintiff suspected this incident was a test to gauge Plaintiff's reaction to being potentially terminated.

46. Over Memorial Day weekend, on or around May 24-26, 2025, a co-worker named Tony failed to complete his on-call responsibilities.

47. This required Plaintiff to cover his tasks on a scheduled holiday.

48. No disciplinary action was taken against Tony.

49. Additionally, Alicia approved Tony's multiple vacation requests, even when they created staffing shortages and allowed him to bypass his immediate supervisor.

50. Tony frequently failed to manage essential duties, left work without clocking in, and was seen by residents at the pool with his family during work hours.

51. Despite repeated incidents, Tony remained employed.

52. On or about June 9, 2025, after receiving positive feedback from residents earlier

that day, Plaintiff was called into the office by Alicia around 4:30 PM, following a prior meeting she had had with Mush.

53. Alicia and Mush were on a conference call with Human Resources when Plaintiff arrived.

54. Alicia requested that Plaintiff surrender his keys, which he handed to Mush.

55. Alicia then informed Plaintiff that he was being terminated effective immediately due to performance issues.

56. HR explained the benefits process before ending the call.

57. Mush accompanied Plaintiff to collect his personal items and expressed disappointment in the decision.

58. Mush then stated that he did not believe valid performance concerns existed and suggested that this termination may be retaliatory.

59. Mush also mentioned that terminations typically follow a longer notice period and that HR had reservations about proceeding with his termination.

60. Kyle from HR had reportedly described Plaintiff as an "asset."

61. Alicia insisted on moving forward with Plaintiff's termination.

62. The timing, lack of evidence of performance concerns, and Alicia's insistence on terminating Plaintiff showcase a clear link between his rejection of her sexually inappropriate advances and his termination.

63. Plaintiff was unlawfully terminated because of his opposition to Alicia's sexual harassment/advances on the basis of his sex (male) on June 9, 2025.

64. Plaintiff was retaliated against, and his employment was ultimately terminated for opposing unlawful discrimination and for exercising his protected rights.

65. Plaintiff reported the sexual harassment to Defendant via his manager, Mush.

66. Plaintiff was targeted for termination because of his sex and reporting of illegal activity.

67. Plaintiff suffered multiple adverse employment actions including, but not limited to, being terminated.

68. There is a basis for employer liability for the sexual harassment that Plaintiff was subjected to.

69. Plaintiff can show that he engaged in statutorily protected activity –a necessary component of his retaliation claim- because Plaintiff lodged complaints directly to his manager about the harassment.

## COUNT I
### Violation of Title VII of the Civil Rights Act
### (Sexual Harassment)

70. Plaintiff repeats and re-alleges paragraphs 1-69 as if fully stated herein.

71. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

72. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*, due to Plaintiff's sex, male.

73. Defendant knew or should have known of the harassment.

74. The sexual harassment was severe or pervasive.

75. The sexual harassment was offensive subjectively and objectively.

76. The sexual harassment was unwelcomed.

77. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

7

78.     As a direct and proximate result of the sexual harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
**Violation of Title VII of the Civil Rights Act of 1964**
**(Sex-Based Discrimination)**

79.     Plaintiff repeats and re-alleges paragraphs 1-69 as if fully stated herein.

80.     By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based of Plaintiff's sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

81.     Plaintiff met or exceeded performance expectations.

82.     Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

83.     Defendant terminated Plaintiff's employment on the basis of Plaintiff's sex.

84.     Plaintiff is a member of a protected class under Title VII due to Plaintiff's sex.

85.     Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

86.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT III
**Violation of Title VII of the Civil Rights Act**
**(Retaliation)**

87.     Plaintiff repeats and re-alleges paragraphs 1-69 as if fully stated herein.

8

88. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

89. During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about sexual harassment and/or sex-based discrimination.

90. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

91. In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough, and objective investigation of Plaintiff's complaint of sexual harassment and/or sex-based discrimination.

92. Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and/or harassing conduct complained of by Plaintiff.

93. Plaintiff's suffered an adverse employment action in retaliation for engaging in a protected activity.

94. By virtue of the foregoing, Defendant retaliated against Plaintiff based on reporting the sexual harassment and/or sex-based discrimination thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

95. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

96. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. Back pay and benefits;

b. Interest on back pay and benefits;

c. Front pay and benefits;

d. Compensatory damages for emotional pain and suffering;

e. Pre-judgment and post-judgment interest;

f. Punitive damages;

g. Reasonable attorney's fees and costs; and

h. For any other relief this Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: July 31, 2025.

Respectfully submitted,

*/s/ Yasmeen Elagha, Esq.*
Yasmeen Elagha, Esq.
Mohammed Badwan, Esq. (Lead)
SULAIMAN LAW GROUP, LTD.
2500 South Highland Ave., Suite 200
Lombard, IL 60148
Phone (331) 272-1945
yelagha@sulaimanlaw.com
*Counsel for Plaintiff*